UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT MOORE,

              Petitioner,                   Case No. 1:15-cv-752

v.                                       Honorable Paul L. Maloney

BONITA HOFFNER,

              Respondent.

_____/

## REPORT AND RECOMMENDATION

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Robert Moore is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Michigan. On July 27, 2010, a Kalamazoo County Circuit Court jury found Petitioner guilty of armed robbery, MICH. COMP. LAWS § 750.529, and possession of a firearm during a felony, MICH. COMP. LAWS § 750.227b. On August 30, 2010, the court sentenced Petitioner as a habitual offender, third-offense, MICH. COMP. LAWS § 769.11, to imprisonment for 16 to 30 years for the armed robbery offense, consecutive to a sentence of 2 years for felony firearm.

      On July 20, 2015, Petitioner filed his habeas corpus petition raising seven grounds for relief, as follows:

I.      Appellate counsel failed to raise ineffective assistance of counsel against trial counsel when he had knowledge of [her] deficient performance.

II.    Appellate counsel failed to add trial transcript notations to Petitioner's Standard 4 brief filed in the Michigan Court of Appeals.

III.    Appellate counsel failed to assert that Petitioner was entitled to a fair trial and a jury pool that represents the cross-section.  Afro-americans were excluded.

IV.    Appellate counsel failed to assert that Petitioner's trial counsel committed perjury in the trial court.

V.    Appellate counsel failed to assert the trial court's failure to instruct the jury on tracking dog evidence.

VI.    Appellate counsel was deficient for failing to raise that trial counsel was ineffective for failing to raise prosecutorial misconduct for failing to disclose that the prosecution's star witness had an outstanding warrant.

VII.    The evidence was insufficient to prove that Petitioner aided and abetted either of the two gun-carrying robbers to commit the crime of felony-firearm.

(Pet., ECF No. 1, PageID.26-28.)  Respondent has filed an answer to the petition (ECF No. 10) stating that the grounds should be denied because they unexhausted, procedurally defaulted, and/or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## **Discussion**

I.    Factual allegations

On Sunday, September 28, 2008, electrician John Allegretti was watching football in his third floor apartment at Bayberry Pointe apartments in Kalamazoo, Michigan.  (Trial Tr. II, ECF No. 11-5, PageID.682-683.)  He received a phone call from his acquaintance, Petitioner, and invited him over to watch the game.  (*Id*., PageID.683.)  At about 9:00 p.m., Mr. Allegretti heard a knock at the door.  (*Id*., PageID.685.)  A look through the peephole disclosed Petitioner was at the door.  (*Id*.)  Unbeknownst to Mr. Allegretti, Petitioner was flanked by two gunman, one carrying a 9 millimeter handgun and the other carrying a rifle.  (*Id*., PageID.685-686.)

2

Mr. Allegretti opened the door.  (*Id.*, PageID.685.)  Petitioner stepped into the room.  (*Id.*)  The gunmen rushed in behind him.  (*Id.*)  As Petitioner's companions held Mr. Allegretti at gunpoint, Petitioner demanded Mr. Allegretti's money.  (*Id.*, PageID.686-687.)  Mr. Allegretti protested.  (*Id.*, PageID.686.)  He was rewarded with the butt of the rifle to his face.  (*Id.*, PageID.688.)  As Mr. Allegretti fell to the floor, Petitioner directed the gunmen to check the victim's pockets for cash.  (*Id.*, PageID. 688-689.)

Mr. Allegretti yelled for his downstairs neighbor to call the police, sprinted for the balcony—crashing through the screen door—and swung down from his third floor balcony to his neighbor's second floor balcony.  (*Id.*)  In Mr. Allegretti's words: "And that was the last contact I had with any of them individuals."  (*Id.*, PageID.689.)

The robbers left with Mr. Allegretti's wedding band, another gold ring, and a gold chain.  (*Id.*, PageID.695.)

Mr. Allegretti's downstairs neighbor, Kassie Pillars, testified as well.  She was watching television that night when she heard a boom and then heard Mr. Allegretti's yell to call the police.  (*Id.*, PageID.774.)  She dialed 911.  (*Id.*)  She heard another crash, which she attributed to Mr. Allegretti bursting through the screen.  (*Id.*, PageID.774-775.)  She peeked out her front door and saw one of the gunmen coming down the stairs with a rifle.  (*Id.*, PageID.775.)  She slammed her door before he got there, but he kicked the door and yelled for her to open it.  (*Id.*)  She ran back toward her bedroom when a bloody Mr. Allegretti came into her apartment through the balcony slider.  (*Id.*)  She called 911 again.  (*Id.*)  She and Mr. Allegretti waited in a bedroom until deputies arrived.  (*Id.*, PageID.780.)

Deputy Paul Runcie testified that he responded to the report of an armed man at the Bayberry Pointe apartments.  (*Id.*, PageID.801.)  He spoke with Mr. Allegretti.  (*Id.*, PageID.802.)

3

He called for a canine unit.  (*Id.*, PageID.803.)  The canine attempted to track the robbers, but stopped at a nearby roadway.  (*Id.*, PageID.804.)  Deputy Runcie surmised that the robbers may have gotten into a vehicle at that point and driven away.  (*Id.*)

Detective Kenneth Jako testified regarding his investigation of the crime.  The court issued an arrest warrant for Petitioner on October 8, 2008.  (*Id.*, PageID.838-839.)  Petitioner was not arrested until January 19, 2010.  (*Id.*, PageID.840.)

Petitioner did not testify in his defense; however, he called the mother of his child, Earlinia Moore, who testified that at the time of the robbery Petitioner was with her.  (Trial Tr. III, ECF No. 11-6, PageID.893-918.)

The jury deliberated for approximately twelve hours over a three-day period.  (Trial Tr. III, ECF No. 11-6; Trial Tr. IV, ECF No. 11-7; Trial Tr. V, ECF No. 11-8.)  It appeared the jury might not be able to reach a verdict on the charges.  On the third day, however, the impasse was broken and the jury found Petitioner guilty of armed robbery.  At the sentencing the prosecutor reported that the foreman of the jury told her that the tally stood at 11-1 on the first ballot during deliberations.  (Sentencing Tr., ECF No. 11-9, PageID.1037.)  It took the eleven jurors many hours to convince the twelfth, who initially believed the alibi defense was credible.  (*Id.*)  The court sentenced Petitioner as described above.

Petitioner's initial appeal brief, filed with the assistance of counsel, raised two issues:

I.     The prosecutor's summation misconduct denied Petitioner his right to due process and a fair trial.

II.     The evidence was insufficient to prove that Petitioner aided and abetted either of the two gun-carrying robbers to commit the crime of felony firearm.

(Pet'r's Br., ECF No. 11-16, PageID.1245.)  Petitioner then filed a Standard 4 pro per brief raising pages and pages of at least 30 issues identified by non-sequential numbers and letters.  (Pet'r's Standard 4 Br., ECF No. 11-16, PageID.1278-1286.)  Additional issues appear to be interspersed throughout the rambling argument section of his Standard 4 brief.  (*Id*., PageID.1288-1335.)

       In the Michigan Court of Appeals January 17, 2012, opinion affirming the trial court, the court directly and thoroughly addressed the two issues raised in the brief Petitioner filed with the assistance of counsel.  The court also directly addressed a significant number of the claims scattered throughout his Standard 4 submission.  To ensure every issue was covered, the court dealt with the remainder as follows: "We have reviewed the remaining arguments, and conclude that they are abandoned due to defendant's failure to provide supporting authority."  (Mich. Ct. App. Op., ECF No. 11-16, PageID.1240.)

       Petitioner then filed an application for leave to appeal in the Michigan Supreme Court.  Petitioner again raised the two issues he had raised in the court of appeals with the assistance of counsel.  (Pet'r's App. for Leave to Appeal, ECF No. 11-17, PageID.1430-1432.)  It also appears he attempted to raise all of the issues he raised in his Standard 4 brief; however, Petitioner's confusing manner of presentation in both courts makes it difficult to ascertain whether he succeeded in his attempt.  (*Id*., PageID.1433-1464.)  Finally, Petitioner raised two new issues relating to ineffective assistance of appellate counsel and the trial court's improper examination of the alibi witness.  (*Id*., PageID.1465-1469.)  Petitioner sought a stay so that he could add additional new issues.  The court accepted Petitioner's supplemental filing that purported to raise new issues and, for that reason, denied Petitioner's motion for stay as moot.  (Mich. Order, ECF No. 11-17, PageID.1428; Mich. Order, ECF No. 11-17, PageID.1727.)

Petitioner returned to the trial court and filed a motion for relief from judgment raising, initially, seven issues which approximate his first six habeas issues.  (Mot. for Relief from J., ECF No. 11-11, PageID.1117-1122.)  But, in support of that motion, Petitioner recycled much of his rambling pro per appeal brief, thereby incorporating dozens more issues.  The trial court addressed Petitioner's claims collectively:

> The best that can be said for several of Defendant's arguments is that he "asserts a number of conclusions and beliefs without stating any facts upon which these conclusions and beliefs are founded."  *Lucking v. Welbilt Corp*, 353 Mich 375, 382 (1958).  To the extent Defendant's arguments are supported by facts, this court finds the arguments lack merit.  Defendant attributes the fact these issues were not raised on appeal to ineffective assistance of appellate counsel.  However, defense counsel is not required to raise a meritless position.  *People v. Kulpinski*, 243 Mich App 8, 27 (2000).  Therefore, Defendant has not established that he is entitled to relief from judgment.

(Kalamazoo Cnty. Cir. Ct. Ord., ECF No. 11-13, PageID.1215.)

Petitioner filed an application for leave to appeal the trial court's denial of his motion for relief from judgment.  Petitioner identified seven issues, but the seven issues are entirely different from the seven issues he raised in the trial court.  (App. for Leave to Appeal, ECF No. 11-18, PageID.1738-1739.)  Only the seventh court of appeals issue offers that both his trial and appellate counsel were ineffective, but does not explain how they were ineffective.  (*Id.*, PageID.1739.)  In his supporting brief, Petitioner references many issues that had been previously raised, but not necessarily as they were raised in the trial court for the motion for relief from judgment.  The Michigan Court of Appeals concluded that Petitioner was raising "grounds for relief that could have been raised previously [but] he . . . failed to establish both good cause for failing to previously raise the issues and actual prejudice from the irregularities alleged [or] . . . that good cause should be waived."  (Mich. Ct. App. Ord., ECF No. 11-18, PageID.1728.)  Accordingly, the court of appeals denied leave to appeal.  (*Id.*)

6

Petitioner then turned to the Michigan Supreme Court.  He filed an application for leave to appeal raising the same seven issues he had raised in the trial court.  (Pet'r's App. for Leave to Appeal, ECF No. 11-19, PageID.2027-2028.)  The supreme court denied leave by order entered March 31, 2015.  (Mich. Ord., ECF No. 11-19, PageID.2025.)

Petitioner then filed this petition.

Petitioner filed many of his state trial and appellate court pleadings along with his petition.  No matter how many issues are raised in those documents, the Court will consider only the seven issues identified in the petition.

II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly

established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state

appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Sufficiency of the evidence (habeas issue VII)

Petitioner contends that there was insufficient evidence that he aided or abetted the felony firearm violations of the other two robbers.  A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA."  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners

who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In deciding Petitioner's challenge to the sufficiency of the evidence, the Michigan Court of Appeals applied the following standard:

> We review de novo a challenge to the sufficiency of the evidence.  *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007).  We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the prosecution proved the elements of the crime beyond a reasonable doubt.  *Id*.  Circumstantial evidence and the reasonable inferences arising therefrom can constitute satisfactory proof of the elements of the crime. *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005).

(Mich. Ct. App. Op., ECF No. 11-16, PagID.1235.)  The court of appeals relied upon *People v. Cline* for the appropriate standard.  The *Cline* court, in turn, relied upon *People v. Wolfe*, 489 N.W.2d 748 (Mich. 1992).  The *Wolfe* court acknowledged that the Michigan courts were simply applying the *Jackson v. Virginia* standard.  *Wolfe*, 489 N.W.2d at 750.  Thus, at a minimum, the Michigan Court of Appeals applied the right standard.

Moreover, the court of appeals applied the standard correctly.  It considered the elements of aiding and abetting felony firearm and then considered the evidence to assess whether, construed in a light most favorable to the prosecution, the prosecution had proven those elements beyond a reasonable doubt:

> In *People v Moore*, 470 Mich 56, 69; 679 NW2d 41 (2004), our Supreme Court held that "aiding and abetting the commission of felony-firearm is no different from aiding and abetting the commission of any other felony."  It explained the proof required to convict a defendant of felony-firearm on an aiding and abetting felony:
>
> > Under the aiding and abetting statute, MCL 767.37, the correct test for aiding and abetting felony-firearm in Michigan is whether the defendant "procures, counsels, aids, or abets in [another carrying or having possession of a firearm during the commission or attempted commission of a felony]."

The prosecutors must do more than demonstrate that defendants aided the commission or attempted commission of the underlying crimes . . . . Rather, the prosecutors must demonstrate that defendants specifically aided the commission of felony-firearm.  Establishing that a defendant has aided and abetted a felony-firearm offense requires proof that a violation of the felony-firearm statute was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that assisted in the commission of the felony-firearm violation, and that the defendant intended the commission of the felony-firearm violation or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement.  In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime.  It must be determined on a case-by-case basis whether the defendant performed acts or gave encouragement that assisted in the carrying or possession of a firearm during the commission of a felony.  [*Id*. at 70-71.]

When viewed in the light most favorable to the prosecution, defendant's actions and words demonstrated an intent to procure, counsel, aid, or abet the possession of a firearm during the commission of the armed robbery.  Defendant called Allegretti and procured an invitation to watch football at Allegretti's apartment, thereby ensuring that Allegretti would open his apartment door when defendant later knocked.  Defendant arrived at Allegretti's door with two men, each armed with a gun.  The three men entered Allegretti's apartment together after Allegretti opened the apartment door.  The man carrying a pistol pointed it at Allegretti's face, forcing Allegretti to back into the apartment.  Defendant demanded Allegretti to hand over "the guap," and when Allegretti questioned defendant, the man with the shotgun hit Allegretti in the face with the butt of the gun.  Defendant then ordered the two men to check Allegretti's pockets for money.  Defendant encouraged and assisted his accomplices' possession of firearms by specifically relying on the firearm possession to intimidate Allegretti, all of which was accomplished by defendant ensuring entrance into Allegretti's apartment.  See *id*. at 71, 73.  Accordingly, defendant's conviction for felony-firearm based on an aiding and abetting theory is supported by sufficient evidence.

(Mich. Ct. App. Op., ECF No. 11-16, PageID.1235-1236 (footnote omitted).)

Petitioner notes that there is no evidence that he ever possessed a gun.  (Pet'r's Br., ECF No. 2-1, PageID.115-117.)  That is undisputed.  Petitioner blithely ignores the evidence cited by the Michigan Court of Appeals as supporting the determination that Petitioner aided and abetted the possession of a firearm by the other participants in the robbery.  In the *Moore* case, upon which

the court of appeals relied and Petitioner now relies (*Id.*, PageID.119-122.), the Michigan Supreme Court considered the convictions for aiding and abetting felony firearm offenses of two defendants, Moore and Harris, arising from entirely separate crimes.  With respect to Harris, the supreme court found sufficient evidence that Harris aided and abetted felony-firearm where he "encouraged and assisted the principal's possession of the firearm by specifically relying on that possession to intimidate his own robbery victim and by specifically ensuring that the principal would be able to successfully enter and exit the scene of the crime while carrying the firearm."  *People v. Moore*, 679 N.W.2d 41, 51 (Mich. 2004).  As the Michigan Court of Appeals reasonably determined from the record, the testimony of John Allegretti and reasonable inferences from that testimony aptly demonstrate that Petitioner encouraged his principals in the same way Harris encouraged his own principal.

Under Michigan law the encouragement offered by Petitioner to his principals is sufficient to impose criminal liability for aiding and abetting felony firearm.  It is the prerogative of the state to define the elements of the crime and the federal courts are bound by their determination.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. ").  The testimony of John Allegretti, considered in light of the elements of aiding and abetting felony firearm as defined by Michigan law and in a light most favorable to the prosecution, was sufficient to permit the jury to find Petitioner guilty of felony firearm beyond a reasonable doubt.  The court of appeals

determination to that effect was neither contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on his sufficiency of the evidence claim.

IV.    Ineffective assistance of appellate counsel (habeas issues I-VI)

Petitioner's remaining habeas issues all arise from allegedly ineffective assistance from his appointed appellate counsel.   In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."

*Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

### A.    Appellate counsel was ineffective for failing to raise trial counsel's ineffective assistance (habeas issue I)

Petitioner's scattershot method of raising issues and arguments makes it difficult to ascertain how many instances of ineffective assistance of trial counsel are covered by this ineffective assistance of appellate counsel claim.  Petitioner's brief on this issue specifically excludes two instances:  (1) trial counsel's failure to object to prosecutorial misconduct during

closing argument; and (2) trial counsel's failure to object to the prosecutor's suggestion that the defense had the burden to prove Allegretti's motive to lie.  (Pet'r's Br., ECF No. 2, PageID.56-57.)  Other instances are at least mentioned:  trial counsel's failure to object to, or understand the law regarding, hearsay, confrontation, domestic assaults, and outstanding warrants.  (*Id.*, PageID.57, 65.)   In evaluating appellate counsel's performance under habeas issue I, the undersigned will consider only those instances of trial counsel's failures that are at least mentioned in Petitioner's argument regarding habeas issue I.

### 1.    confrontation

As best as can be determined from Petitioner's cryptic argument, Petitioner's claim that appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for failing to raise the issue of confrontation potentially relates to only four witnesses: the emergency room physician who treated Mr. Allegretti after the robbery, Donnie Williams, Matthew Justice, and Johnny West.  The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

The Confrontation Clause is not implicated with respect to Donnie Williams, Matthew Justice, or Johnny West, because they never "testified" at trial, either directly or through

the introduction of testimonial out-of-court statements, *Crawford*, 541 U.S. at 68-69.  The clause

applies only to witnesses—those who provide testimony.  A criminal defendant has no right to

confront a person who provides no evidence at trial.  *See Cooper v. California*, 386 U.S. 58, 62

n.2 (1967) ("Petitioner also presents the contention here that he was unconstitutionally deprived

of the right to confront the witnesses against him, because the State did not produce the informant

to testify against him.  This contention we consider absolutely devoid of merit."); *see also McCray

v. Illinois*, 386 U.S. 300, 313-314 (1967) (same); *United States v. Moore*, 954 F.2d 379, 381

(6th Cir. 1992) ("The Sixth Amendment guarantees to a defendant the right to confront witnesses

against him . . . [it] does not, however, require the government to call every witness competent to

testify . . . ."); *United States v. Porter*, 764 F.2d 1, 9 (1st Cir. 1985) ("The confrontation clause

does not come into play where a potential witness neither testifies nor provides evidence at trial.");

*United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985) ("[T]he Confrontation Clause is

not a guarantee that the prosecution will call all the witnesses it has against the defendant.").

There may be a colorable Confrontation Clause claim with regard to the emergency

room physician because Mr. Allegretti's medical records from his trip to the emergency room after

the robbery were admitted into evidence.  (Trial Tr. II, ECF No. 11-5, PageID.850.)  Other than

their identification, however, the records were never the subject of any testimony.  There is nothing

in the record before the Court to indicate that the medical records include out-of-court statements

by the emergency room physician.  Nonetheless, even if the records include such statements, there

is still no Confrontation Clause issue because the medical records are not testimonial.

Since *Crawford*, the Supreme Court has not hesitated to provide categorical

guidance regarding whether or not statements are testimonial.  The Court has indicated in at least

four decisions that statements made for purposes of medical diagnosis or treatment or medical

16

reports created for treatment purposes should not be considered testimonial.  *See Bullcoming v. New Mexico*, 564 U.S. 647, 672 (2011) ("[T]his is not a case in which the State suggested an alternate purpose, much less an alternate primary purpose, for the BAC report. For example, the State has not claimed that the report was necessary to provide Bullcoming with medical treatment."); *Michigan v. Bryant*, 562 U.S. 344, 362 n.9 (2011) (listing "Statements for Purposes of Medical Diagnosis or Treatment" under Federal Rule of Evidence 803(4) as an example of statements made for a purpose other than prosecution that are, thus, not testimonial); *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 312 (2009) ("Other[ cases] are simply irrelevant, since they involved medical reports created for treatment purposes, which would not be testimonial under our decision today."); *Giles v. California*, 554 U.S. 353, 376, (2008) ("[O]nly testimonial statements are excluded by the Confrontation Clause. Statements . . . to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules . . . .").

There is nothing in the record, and Petitioner offers no evidence, that the emergency room physician's statements, if any, in the medical record served the primary purpose of creating an out-of-court substitute for trial testimony.  Therefore, Petitioner has failed to show that the statements at issue were testimonial.  Absent that showing, the statements do not run afoul of the Confrontation Clause.  The Michigan Court of Appeals determination to that effect on direct appeal (Mich. Ct. App. Op., ECF No. 11-16, PageID.1237) is neither contrary to nor an unreasonable application of clearly established federal law.  Because the Confrontation Clause claim is meritless, Petitioner's claim that trial counsel was ineffective for failing to raise it is likewise meritless, as is Petitioner's claim that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on this issue.  Counsel's failure to raise a meritless issue does not constitute ineffective assistance.  *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice

17

requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'"). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, Petitioner is not entitled to habeas relief on this issue.

2.    domestic assaults

Petitioner's argument with regard to the introduction of evidence regarding domestic assaults is difficult to understand. Petitioner was not arrested until almost a year and a half after the incident. Yet, even though the issue of Petitioner's whereabouts on September 28, 2008, did not arise until months and months after the fact, Petitioner's alibi witness was able to recall that Petitioner was with her on that date. Her recall was prompted by another significant event that day. Petitioner's alibi witness testified as follows:

> Q    Okay. Do you know what day of the week September 28th of 2008 was?
>
> A    If I'm not mistaken, I think it was a Sunday.
>
> Q    What is it that you recall about that day that gives you the conclusion that it was a Sunday? What do you remember specifically?
>
> A    I had got a call from Robert Moore stating that him and his girlfriend Keitha had got into it and he was at his mom house and she called the police on him.
>
> Q    All right. So he was dating a woman by the name of Keitha at the time?
>
> A    Yes.
>
> Q    He phoned you, said that they had gotten into an argument?
>
> A    Yes.
>
> Q    And was he--what else did he say? Was he on his way over, did he ask you what you were doing?
>
> A    He ask me could I get him a ride, he was running from the police.

18

Q      All right. So he didn't want to deal with that situation with Keitha.

A      Right.

(Trial Tr. III, ECF No. 11-6, PageID.896-897.)  Thus, the fact that a domestic dispute between Petitioner and his girlfriend occurred on a particular date was critically important to Petitioner's defense.  Petitioner introduced the issue into the proceedings.

Detective Jako investigated the alibi witness's claim of a domestic dispute on that date.  He found a report regarding such an incident between Petitioner and his girlfriend that occurred on September 25 and another report regarding such an incident that occurred on September 28.  (Trial Tr. II, ECF No. 11-5, PageID.398-401.)  The detective never identified which of the two parties was the victim or the aggressor, only that an incident had been reported.  The only insight into which party might be at fault was provided by Petitioner's alibi witness.  It is entirely disingenuous for Petitioner to complain that his trial counsel rendered ineffective assistance by permitting the introduction of evidence regarding these incidents when his witness was the source and her testimony was critical to his alibi defense.

The issue was not raised under the rubric of ineffective assistance of trial or appellate counsel on Petitioner's direct appeal; however, Petitioner did raise the issue in his Standard 4 brief as an instance of prosecutorial misconduct.  The court of appeals rejected Petitioner's claim:

Defendant next claims that the prosecutor used the evidence of his two domestic violence charges to paint him as a bad man.  Evidence of a defendant's other crimes, wrongs, or acts is not admissible to prove action in conformity therewith.  MRE 404(b)(1); *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009).  However, evidence of a defendant's other bad acts may be used for noncharacter purposes.  MRE 404(b)(1); *People v Roper*, 286 Mich App 77, 92; 777 NW2d 483 (2009).  Here, the two police reports of defendant engaging in domestic violence against Tigues were not used by the prosecutor to establish that defendant was a bad person.  Rather, the parties used the evidence of the domestic violence reports to evaluate the credibility of Earlinia's alibi testimony.  For

19

> example, that there was a police report that defendant engaged in domestic violence on September 28, 2008, before 3:30 p.m. provided corroboration to Earlinia's testimony.  Accordingly, we reject defendant's argument that the prosecutor used evidence of the two domestic violence charges as improper character evidence.

(Mich. Ct. App. Op., ECF No. 11-16, PageID.1238.)  The appellate court's conclusion that the evidence was properly admitted as a matter of state evidentiary law is binding on this Court. *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) ("'[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'") (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)).  Therefore, any objection by trial counsel to this evidence would have been denied as meritless.  Similarly, any challenge by appellate counsel based on trial counsel's failure to object would have been denied as meritless.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley*, 706 F.3d at 752.  Accordingly, Petitioner is not entitled to habeas relief on this issue.

### 3.    outstanding warrant

Petitioner also claims his trial counsel rendered ineffective assistance because she did not object to testimony regarding an outstanding warrant for the arrest of his alibi witness.  The prosecutor contended that Petitioner's alibi witness's refusal to cooperate with the detective investigating the alibi and the witness's failure to show for Petitioner's first scheduled trial date reflected her hesitance to perjure herself to support Petitioner's case.  (Trial Tr. III, ECF No. 11-6, PageID.910-912.)  The defense offered another reason: there was an outstanding warrant for her arrest because she had failed to appear at a court hearing years earlier.  The alibi witness used the excuse of the outstanding warrant for her refusal to talk with the detective as he attempted to investigate Petitioner's alibi and her refusal to appear for the first trial.  (*Id*., PageID.901-902, 908.) The alibi witness claimed she was able to show up for Petitioner's actual trial because she had

been able to prearrange housing and care for her children in the event execution of the arrest warrant were to result in her spending the night in jail.  (*Id.*, PageID.913-914.)

Once again, it is entirely disingenuous for Petitioner to claim his counsel was ineffective for presenting evidence that was necessary to support Petitioner's position.  The Michigan Court of Appeals ruled the evidence was properly admitted.  (Mich. Ct. App. Op., ECF No. 11-16, PageID.1238 ("The prosecutor did not use the evidence to argue that Earlinia could not be believed because there was an outstanding warrant for her arrest . . . .").)  Any objection to the evidence, therefore, would have not only been detrimental to Petitioner's position, it would have been meritless as well.  Accordingly, Petitioner is not entitled to habeas relief on this issue.

4.    hearsay

Petitioner argues that his trial counsel did not understand the law regarding hearsay. He does not provide any examples.  In that regard, Petitioner is repeating a pattern he started on direct appeal in the Michigan Court of Appeals.   That court rejected many of Petitioner's arguments because Petitioner had simply failed to support them:

> Defendant raises numerous other issues in his standard 4 brief . . . .  We have reviewed the remaining arguments, and conclude that they are abandoned due to defendant's failure to provide supporting authority.  "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

(Mich. Ct. App. Op., ECF No. 11-16, PageID.1240-1241 (footnote omitted).)  Then Petitioner did the same thing in the trial court with regard to his motion for relief from judgment.  The trial court noted: "The best that can be said for several of Defendant's arguments is that he 'asserts a number of conclusions and beliefs without stating any facts upon which these conclusions and beliefs are founded.'"  (Kalamazoo Cnty. Cir. Ct. Order, ECF No. 11-13, PageID.1215 (citation omitted).)

21

Similarly, it is not this Court's obligation to conjure up how trial counsel's performance fell short for failure to object to hearsay evidence that was admitted or failure to seek admission of evidence that she erroneously believed to be hearsay, or to ferret out what prejudice may have resulted.  It is Petitioner's.  Petitioner has failed to do so here.  Therefore, at a minimum, he has failed to demonstrate how the state court's rejection of his claim is contrary to or inconsistent with clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this issue.

**B.      Appellate counsel was ineffective for failing to add transcript cites to Petitioner's Standard 4 brief (habeas issue II)**

Petitioner next contends that appellate counsel rendered ineffective assistance because counsel never added transcript cites to Petitioner's pro per appeal brief.  At least that is what the heading to the argument says.  (Pet'r's Br., ECF No. 2, PageID.67.)  The argument, however, mentions not one word about the transcript cites or Petitioner's pro per court of appeals brief.  (*Id.*, PageID.67-73.)  The issue presented in the argument is: did the trial court err in refusing to substitute new appeal counsel for Petitioner.  (*Id.*)  Both issues are addressed below.

1.      Denial of Petitioner's second motion to substitute appellate counsel

Review of the trial court docket reveals that the appellate counsel that Petitioner now contends was ineffective was not Petitioner's first appellate counsel.  The trial court first appointed appeal counsel by order entered September 14, 2010.  (Kalamazoo Cnty. Cir. Ct. Register of Actions, ECF No. 11-1, PageID.408.)  By Thanksgiving, Petitioner asked the trial court to appoint new counsel.  (*Id.*, PageID.409.)  The trial court obliged.  By order entered January 28, 2011, the trial court substituted the State Appellate Defenders Office for Petitioner's original appellate counsel.  (*Id.*)

Petitioner's new appellate counsel filed Petitioner's initial brief, sent Petitioner a detailed letter explaining why he did not include all of the issues requested by Petitioner (June 24,

2011 Corr. excerpts, ECF No. 2-2, PageID.141-143), invited Petitioner to file a Standard 4 brief if Petitioner still wanted to raise those issues (*id*.), and then filed Petitioner's Standard 4 Brief and pro per motion to remand.  Petitioner moved for substitute appellate counsel again, but only after all of appellate counsel's work was done.  (Pet'r's Mot., ECF No. 3, PageID.177-180.)  He argued that counsel had refused to pursue remand for a *Ginther* hearing and had failed to add transcript cites to Petitioner's Standard 4 brief.  (*Id*.)  Petitioner believed counsel's failure to seek remand on Petitioner's behalf constituted a bona-fide dispute that warranted substitute counsel.  (*Id*.)  The trial court denied the motion without prejudice.  (Kalamazoo Cnty. Cir. Ct. Order, ECF No. 3, PageID.150.)  Subsequent to Petitioner's motion, however, appellate counsel was not called upon to do anything but forward court of appeals filings to Petitioner.  (*See* Aug. 25, 2011, Nov. 15, 2011, Jan. 20, 2012 and Feb. 3, 2012 Corr., ECF No. 11-17, PageID.1636-1640.)  Petitioner has not identified any failure to communicate, irreconcilable conflict, or deficient performance subsequent to Petitioner's motion to substitute counsel.

The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense."  U.S. Const., amend. VI.  One element of that right is the right to have counsel of one's choice.  *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006).  However, the right to counsel of choice is not without limits.  *Id*. at 148; *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007).  "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *Gonzalez-Lopez*, 548 U.S. at 151 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988), and *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)).

"'An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.'"  *Mooneyham*, 473

F.3d at 291 (quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)); *see also Caplin & Drysdale*, 491 U.S. at 624 ("[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.").  "Good cause" for a substitution exists where there is "a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict."  *Stadler v. Berghuis*, 483 F. App'x 173, 178 (6th Cir. 2012) (quoting *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985)); *see also Lakin v. Stine*, No. 99-1529, 2000 WL 1256900, *5 n.2 (6th Cir. Jul. 13, 2000); *Morton v. Foltz*, No. 84-1813, 1985 WL 14072, *1 (6th Cir. Dec. 11, 1985).  Disagreements over strategy do not suffice to establish good cause.  *See, e.g., United States v. Johnson*, 612 F. App'x 345, 352 (6th Cir. 2015); *United States v. Herrera*, 636 F. App'x 2d 250, 255 (6th Cir. 2016).

Petitioner's submissions reveal that Petitioner and his appellate counsel continued to communicate throughout the representation.  (*See* Aug. 25, 2011, Nov. 15, 2011, Jan. 20, 2012, and Feb. 3, 2012 Corr., ECF No. 11-17, PageID.1636-1640.)  Petitioner has failed to identify any conflict of interest.  And, even though Petitioner disagreed with his counsel's decision to exclude the myriad issues Petitioner wanted to raise--which, in turn, rendered Petitioner's desired motion to remand unnecessary--that strategic disagreement was hardly irreconcilable.  Counsel simply filed the brief and motion prepared by Petitioner.  There is no constitutional flaw in the trial court's denial of Petitioner's motion to substitute counsel.  Petitioner has failed to show that the trial court's denial of his motion is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on this issue.

2.    Appellate counsel's failure to add transcript cites to Petitioner's pro per brief on appeal

Petitioner, in his argument heading and in prior briefs in the state court, claims that counsel was constitutionally obligated to provide additional assistance by adding transcript cites

to Petitioner's Standard 4 brief.  Petitioner contends the obligation is stated expressly in the Michigan Supreme Court's administrative order regarding minimum standards for indigent criminal appellate defense services:

> Standard 4
>
> When a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims in propria persona.  Defendant's filing shall consist of one brief filed with or without an appropriate accompanying motion.  *Counsel shall also provide such procedural advice and clerical assistance as may be required* to conform the defendant's filing for acceptability to the court.  The defendant's filing in propria persona must be received by the Court of Appeals within 84 days after the appellant's brief is filed by the attorney . . . .

Mich. Administrative Order No. 2004-6 (emphasis supplied).

Petitioner's contention fails on two levels: first, he has failed to demonstrate that counsel is required to add transcript cites under the "procedural advice and clerical assistance" section of the standard; and, second, the requirement that counsel assist with a pro per brief is a matter of state law and does not implicate the federal constitutional right to appellate counsel. Petitioner provides no authority for his claim that procedural advice and clerical assistance includes adding transcript cites to his pro per brief.  Although the Michigan courts have not squarely addressed that issue, the Michigan Court of Appeals resolution of a similar issue suggests counsel has no such obligation.  In *People v. Bennett*, No. 284887, 2009 WL 3837172, *5 (Mich. Ct. App. Nov. 17, 2009), the Michigan Court of Appeals concluded that "procedural advice and clerical assistance" did not require counsel to provide counsel's copy of the trial transcript to defendant for preparation of defendant's Standard 4 brief.

Moreover, clearly established federal law holds that there is no "constitutional right to self-representation on direct appeal from a criminal conviction."  *Martinez v. Court of Appeal of Cal*., 528 U.S. 152, 163 (2000).  The Sixth Circuit has determined that the *Martinez* holding

"contradicts the . . . assertion that there exists a constitutional entitlement to submit a *pro se* appellate brief on direct appeal in addition to the brief submitted by appointed counsel." *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000).   On that foundation, the federal courts in Michigan have concluded that appellate counsel's failures to comply with Standard 4, or the similar provision that preceded it (Standard 11 of Mich. Admin. Order 1981-7) does not raise a federal constitutional issue.   *See Gates v. Hoffner*, No. 1:13-cv-713, 2017 WL 4083190 (W.D. Mich. Aug. 17, 2017); *Bennett v. Curtin*, No. 10-14394, 2012 WL 5363571 (E.D. Mich. Oct. 30, 2012); *Naturalite v. Scutt*, No. 2:09-cv-73, 2011 WL 206154 (W.D. Mich. Jan. 21, 2011); *Hardiman v. Curtin*, No. 1:06-cv-177, 2009 WL 2616259 (W.D. Mich. Feb. 13, 2009);   *Dowdy v. Sherry*, No. 06–CV–10735, 2008 WL 5188827 (E.D.Mich. Dec.10, 2008); *Jones v. Jones*, No. 1:04-cv-309, 2007 WL 2219356 (W.D. Mich. July 30, 2007).

Petitioner has failed to show that the trial court's rejection, as meritless, of this claim was contrary to, or an unreasonable application of, clearly established federal law. Therefore, he is not entitled to habeas relief on this issue.

**C.    Appellate counsel was ineffective because he failed to raise the issue that Petitioner's jury was not drawn from a fair cross section of the community because African-Americans were excluded (habeas issue III)**

Petitioner claims appellate counsel ignored a "dead bang winner" issue because his jury was not drawn from a fair cross section of the community.   The improper jury selection system, he contends, excluded African-Americans.   Petitioner provides a detailed and compelling analysis of the Kalamazoo circuit and district court jury selection system and its flaws.   Petitioner's analysis, however, is simply a paragraphs-long, unattributed quote from the case of *People v. Hubbard*, 552 N.W.2d 493 (Mich. App. 1996) overruled in *People v. Bryant*, 822 N.W.2d 124 (Mich. 2012).  In *Hubbard*, the Michigan Court of Appeals determined that the system for selecting

juries in the Kalamazoo courts **from the mid-1980's to mid-1992** was flawed and resulted in the underrepresentation of African-American jurors in that defendant's jury array.  The systematic problem identified by the *Hubbard* court, however, had been corrected for more than a decade when Petitioner's pool of jurors was selected.  *Hubbard*, 552 N.W.2d at 500.

The Michigan Court of Appeals rejected Petitioner's claim that the fair-cross-section requirement had been violated:

> Defendant argues that because only one out of the 48 members of the jury venire was African-American, the venire was not a representative cross section of the community.  A defendant's Sixth Amendment right to trial by jury, US Const, Am VI, includes the right to have a jury venire from a representative cross section of the community.  *People v Bryant*, 289 Mich App 260, 265-266; 796 NW2d 135 (2010).  To establish a prima facie violation of the fair-cross-section requirement, a defendant must establish the following:
>
> > (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.  [*Duren v Missouri*, 439 US 357, 364 (1979).]
>
> Assuming, as did the trial court, that African-Americans were underrepresented in the jury venire, defendant makes no claim that the underrepresentation of African-Americans was due to systematic exclusion, which is "exclusion 'inherent in the particular jury-selection process utilized.'"  *Bryant*, 289 Mich App at 273, quoting *Duren*, 439 US at 366.  Accordingly, defendant fails to establish a prima facie case of a violation of the fair-cross-section requirement.

(Mich. Ct. App. Op., ECF No. 11-16, PageID.1239.)  The Michigan Court of Appeals, relying on the clearly established federal law of *Duren v Missouri,* 439 US 357, 364 (1979), determined that Petitioner had failed to link the apparent underrepresentation to "systematic exclusion of the group in the jury-selection process."  (*Id*.)  That determination is well-grounded in the record.  Moreover, it is a shortcoming that Petitioner has not corrected in this Court.  Put simply, Petitioner's fair-cross-section claim, as raised, is meritless.  Counsel's failure to raise a meritless issue does not

constitute ineffective assistance. *See Sutton*, 645 F.3d at 755; *Coley*, 706 F.3d at 752. Accordingly, Petitioner is not entitled to habeas relief on this issue.

### D. Appellate counsel was ineffective for failing to raise Petitioner's claim that trial counsel committed perjury (habeas issue IV)

Petitioner's next "dead bang winner" issue allegedly ignored by appellate counsel is Petitioner's claim that trial counsel committed perjury. As a starting point, Petitioner's trial counsel's allegedly perjurious statements were not made in a circumstance where an oath was authorized or required. Therefore, under Michigan law, she did not commit perjury. MICH. COMP. LAWS §§ 750.422, 750.423; *People v. Lively*, 680 N.W.2d 878 (Mich. 2004). The Court will consider Plaintiff's claim as if he alleged trial counsel made a false statement to the court, even if the false statement does not rise to the level of perjury. None of the Michigan courts specifically addressed Petitioner's claim that his counsel made false or perjurious statements to the trial court.

Petitioner claims that counsel made the allegedly false statements on the first day of trial before the potential jurors were called into the courtroom. The first 30 pages of transcript relate to Petitioner's request for an adjournment and request for substitute counsel because he disagreed with existing counsel about trial strategy. The allegedly false statement was made after the judge denied both motions. At that time, Petitioner's counsel stated:

> MS. CAMFIELD-KUIPER: Your Honor, I would just like to place one response. Mr. Moore had said that I made stipulations with Miss Hungerford without his consent.
>
> Miss Hungerford and I did converse yesterday during the day. We talked about some potential evidentiary stipulations to move the matter along more efficiently, and I did go into those with my client last night prior to coming in today, in the event he had any disagreements with those, and that's why I placed the information about Dr. Duncan on the record.
>
> So while we had discussed potential stipulations, none of those were set in stone, and certainly none of them placed on the record that my client disagrees with.

Nothing other than that, thank you.

(Trial Tr. I, ECF No. 11-4, PageID.479.)

Petitioner claims that counsel's statement is revealed as false based on an earlier statement by the prosecutor:

> MS. HUNGERFORD:        And [Petitioner's counsel] has indicated that she's not calling witnesses, and I said well I'm not calling, so we kind of had an understanding that things weren't going to, but the Defendant thought otherwise so.

(*Id.*, PageID.454.)    The  apparently  conflicting  representations  are  Ms.  Camfield-Kuiper's statement that "while we had discussed potential stipulations, none of those were set in stone" and Ms. Hungerford's representation that "we kind of had an understanding[.]"

The  two  statements  are  not  mutually  exclusive.   The  latter  certainly  does  not demonstrate the falseness of the former.  A fair reading of the entire exchange before *voir dire* discloses that Ms. Camfield-Kuiper had made clear to Petitioner and the trial court that she and Petitioner differed significantly with respect to the benefit of calling certain witnesses and admitting certain evidence; she had discussed her likely course of proceeding with the prosecutor and Petitioner, but she had not bound Petitioner to a particular course of action because, at the opening of the proceedings, it was not apparent that she would be continuing the representation. Petitioner had asked the trial court to remove her.  Thus, though nothing was "set in stone" the prosecutor and defense counsel "kind of had an understanding" regarding the witnesses and evidence that would be presented at trial.

There  was  nothing  "false"  about  counsel's  representation  to  the  trial  court. Petitioner's argument is frivolous.  Appellate counsel's failure to pursue it on appeal was neither professionally  unreasonable  nor  prejudicial.   *Coley*, 706 F.3d at 752.  The Michigan courts' categorical rejection of Petitioner's claim as factually unsupported is entirely consistent with

29

clearly established federal law and reasonable on the record.  Accordingly, Petitioner is not entitled to habeas relief on this issue.

> ### E. Ineffective assistance of appellate counsel for failing to challenge the trial court's failure to give the "tracking dog" instruction (habeas issue V)

Petitioner next contends that appellate counsel was ineffective for failing to challenge the trial court's failure to give the "tracking dog" instruction.   That instruction presently provides:

> You have heard testimony about the use of a tracking-dog.  You must consider tracking-dog evidence with great care and remember that is has little value as proof.  Even if you decide that it is reliable, you must not convict the defendant based only on tracking-dog evidence.  There must be other evidence that the defendant is guilty.

MICH. M. CRIM. J. I. 4.14.  The tracking-dog evidence came in through the testimony of Deputy Runcie and Detective Jako.  Both witnesses indicated the dog, handled by an officer from the City of Kalamazoo, started to track, but reached the end of the track at the road near Mr. Allegretti's apartment.  The evidence did nothing to inculpate or exculpate Petitioner.  The tracking-dog evidence was immaterial to Petitioner's guilt or innocence.  It was apparently offered only to show the steps taken during the investigation.

The Michigan courts did not specifically address Petitioner's tracking-dog-instruction claim; they apparently included the issue in the claims resolved categorically as meritless.  That is not surprising; the Michigan courts have routinely determined that failure to give the instruction is harmless or failure to request it is not prejudicial where there was no actual incriminating tracking-dog evidence or where the tracking dog evidence was insignificant in comparison to the other evidence of guilt.  *See People v. McMillen,* 336 N.W.2d 895, 896 (Mich. Ct. App. 1983); *People v. McRaft*, 301 N.W.2d 852, 855-856 (Mich. Ct. App. 1980); *People v.*

*Edmonds*, No. 324869, 2017 WL 1033750, *1 (Mich. Ct. App. Mar. 16, 2017), *People v. Anderson*, No. 330652, 2017 WL 2791034, *13 (Mich. Ct. App. June 27, 2017); *see also People v. Sherwood*, No. 330595, 2017 WL 1394941 (Mich. Ct. App. Apr. 18, 2017); *People v. Edmonds*, No. 324869, 2016 WL 717143, *2 (Mich. Ct. App. Feb. 23, 2016); *People v. Williams*, No. 320645, 2015 WL 2214518, *1 (Mich. Ct. App. May 12, 2015); *People v. Love*, No. 314439, 2014 WL 2118266, *2 (Mich. Ct. App. May 20, 2014); *People v. Martin*, No. 274619, 2008 WL 108876, *1 (Mich. Ct. App. Jan. 10, 2008); *People v. Alexander*, No. 191015, 1998 WL 1989800, *3 (Mich. Ct. App. Sept. 29, 1998).

Not every claimed instructional error rises to the level of a constitutional violation. "Before a federal court may overturn a conviction resulting from a state trial in which [the challenged] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). The Supreme Court has defined the subcategory of instructional errors that warrant habeas relief very narrowly. *Estelle v. McGuire*, 502 U.S. 62, 73 (1991) (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990) ("Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.").

The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). When a jury is not properly instructed with regard to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated. *Sandstrom v. Montana*, 442 U.S. 510 (1979). As noted above, however, it is the prerogative of the state to define the elements of the crime and the federal courts are bound by their determination. *See Johnson*, 559 U.S. at 138; *Jackson*, 443 U.S. at 324 n.16.

Similarly, the Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485 (1984). Nonetheless, it is also the prerogative of the state to define whether or not a defense applies to a particular crime. *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .")

The missing instruction here does not directly bear on an element of the offenses with which Petitioner was charged, nor does it bear on any defense he asserted. As noted above, the tracking-dog evidence was insignificant in the case; it did nothing to inculpate or exculpate Petitioner. The absence of the cautionary instruction regarding such evidence, therefore, cannot rise to the level of a constitutional issue. Petitioner has failed to show that the state courts' rejection of his instructional error claim (or the related claim that counsel was ineffective for failure to raise the issue on appeal), is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on this issue.

> **F.    Appellate counsel's failure to raise trial counsel's failure to raise the prosecutor's failure to provide information regarding an arrest warrant against the prosecutor's star witness (habeas issue VI)**

Petitioner's habeas issue VI as identified in the heading in his supporting brief raises the issue regarding an outstanding warrant for Mr. Allegretti; however, the heading also includes the issues regarding the outstanding warrant for Petitioner's alibi witness and the domestic violence incidents involving Petitioner. (Pet'r's Br., ECF No. 2-1, PageID.99.) The argument is focused entirely on the alibi witness's outstanding warrant and Petitioner's domestic violence

incidents; it does not reference the arrest warrant for Mr. Allegretti.  (*Id.*, PageID.99-112.)  The issues regarding the alibi witness's outstanding warrant and Petitioner's domestic violence incidents are discussed and resolved in § IV.A. above and will not be reconsidered here.  The issue regarding the warrant for Mr. Allegretti is discussed below.

Petitioner claims the existence of an outstanding arrest warrant for Mr. Allegretti was brought to Petitioner's attention by the letter from his appellate counsel explaining why counsel would not raise certain issues in the appeal brief.  Counsel wrote:

> I spoke to your trial lawyer, Ms. Camfield-Kuiper.  She said that she *did* investigate Allegretti's criminal past, and that she found drug and weapon convictions (plus a bench warrant for an unspecified charge).  She also checked for out-of-county convictions, but found none.  She does not agree that Allegretti opened the door to the drug and weapon convictions.  In any event, she made a strategic decision to strike a deal with the prosecutor to steer clear of your shared prison history (and thus, Allegretti's criminal past), which she thought was more harmful than helpful.

(June 24, 2011 Corr., ECF No. 2-2, PageID.142.)

Peeling back the layers of Petitioner's claim of constitutional error, at the core lies his contention that the prosecutor violated the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963) when she failed to provide information regarding an outstanding arrest warrant for Mr. Allegretti.    Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  The Supreme Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 281 (quoting *Bagley*, 473 U.S. at 682); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

However, the *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006). The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)). "[W]here the alleged *Brady* evidence is available to the defense, there is really nothing for the government to disclose." *Bell v. Bell*, 512 F.3d 223, 235 (internal quotations omitted). Even if the warrant evidence were favorable to Petitioner, and even if the prosecutor very purposefully suppressed it, no prejudice ensued because Petitioner's counsel discovered the evidence anyway.

The absence of prejudice at the core of Petitioner's *Brady* claim begets an absence of prejudice at the remaining layers of the claim as well. It was neither professionally unreasonable nor prejudicial for appellate counsel to fail to raise the claim that trial counsel rendered ineffective assistance because it was neither professionally unreasonable nor prejudicial for trial counsel to fail to raise a *Brady* claim where no prejudice ensued because trial counsel had the purportedly suppressed evidence in hand. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley*, 706 F.3d at 752.

The state courts' rejections of Petitioner's *Brady*-based claim are entirely consistent with, and a reasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this, or any, of his claims.

### Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

35

**Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated:  March 8, 2018                                      /s/ Ray Kent
                                                                    United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).