UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| Robert Moore, | ) | |
| --- | --- | --- |
| Petitioner, | ) | |
| | ) | No. 1:15-cv-752 |
| -v- | ) | |
| | ) | HONORABLE PAUL L. MALONEY |
| Bonita Hoffner, | ) | |
| Respondent. | ) | |
| | ) | |

## OPINION

On July 22, 2015, Petitioner filed a motion under 28 U.S.C. § 2254 seeking relief from a state conviction. (ECF No. 1.) The State of Michigan, through Hoffner, filed its response on July 6, 2016. (ECF No. 10.) The Magistrate Judge issued an R&R on March 8, 2018, recommending that the petition be denied. (ECF No. 14.) The matter is now before the Court for de novo review of Petitioner's timely objections to the R & R. (ECF No. 15.)

### Statement of Facts

Petitioner "objects to the Magistrate's erroneous determination of the facts." (ECF No. 15.) Specifically, Petitioner objects that the magistrate judge "misquoted the information" and "left out important facts." He asserts that the Magistrate could have included more testimony from Officer Runcie and the victim, John Allegretti.

Objections to facts in an R & R are reviewed under the "clearly erroneous" standard. The Court does not find that any of the facts presented in the R & R are clearly erroneous. However, it will consider all of the additional trial testimony that Petitioner has quoted liberally within his objections.

## Legal Framework

With respect to a dispositive motion, a magistrate judge issues a report and recommendation, rather than an order. After being served with a report and recommendation (R & R) issued by a magistrate judge, a party has fourteen days to file written objections to the proposed findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). A district court judge reviews de novo the portions of the R & R to which objections have been filed. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (*per curiam*) (holding the district court need not provide de novo review where the objections are frivolous, conclusive or too general because the burden is on the parties to "pinpoint those portions of the magistrate's report that the district court must specifically consider"). Failure to file an objection results in a waiver of the issue and the issue cannot be appealed. *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *see also Thomas v. Arn*, 474 U.S. 140, 155 (upholding the Sixth Circuit's practice). The district court judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

## Analysis

Petitioner asserted seven grounds for relief in his § 2254 petition:

I. Appellate counsel failed to raise ineffective assistance of counsel against trial counsel when he had knowledge of [her] deficient performance.

II. Appellate counsel failed to add trial transcript notations to Petitioner's Standard 4 brief filed in the Michigan Court of Appeals.

III. Appellate counsel failed to assert that Petitioner was entitled to a fair trial and a jury pool that represents the cross-section. Afro-americans were excluded.

IV. Appellate counsel failed to assert that Petitioner's trial counsel committed perjury in the trial court.

V. Appellate counsel failed to assert the trial court's failure to instruct the jury on tracking dog evidence.

VI. Appellate counsel was deficient for failing to raise that trial counsel was ineffective for failing to raise prosecutorial misconduct for failing to disclose that the prosecution's star witness had an outstanding warrant.

VII. The evidence was insufficient to prove that Petitioner aided and abetted either of the two gun-carrying robbers to commit the crime of felony- firearm.

After examining each issue, the magistrate judge concluded Petitioner's arguments lacked merit and recommended that the Court deny his petition in a 36-page Report & Recommendation. (ECF No. 11.) Petitioner now lodges 39 pages of objections to the magistrate judge's conclusions. (ECF No. 12.)

### I. Sufficiency of the evidence

The magistrate judge concluded that Petitioner's claim for habeas relief based on the sufficiency of the evidence was meritless. The standard is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When brought in a § 2254 proceeding, the AEDPA standard also applies, so "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should

be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

Based on this standard, the magistrate judge concluded that Petitioner's claim was meritless because Petitioner ignored the evidence cited by the Michigan Court of Appeals as supporting the determination that Petitioner aided and abetted the possession of a firearm by the other participants in the robbery. That court concluded:

> When viewed in the light most favorable to the prosecution, defendant's actions and words demonstrated an intent to procure, counsel, aid, or abet the possession of a firearm during the commission of the armed robbery. Defendant called Allegretti and procured an invitation to watch football at Allegretti's apartment, thereby ensuring that Allegretti would open his apartment door when defendant later knocked. Defendant arrived at Allegretti's door with two men, each armed with a gun. The three men entered Allegretti's apartment together after Allegretti opened the apartment door. The man carrying a pistol pointed it at Allegretti's face, forcing Allegretti to back into the apartment. Defendant demanded Allegretti to hand over "the guap," and when Allegretti questioned defendant, the man with the shotgun hit Allegretti in the face with the butt of the gun. Defendant then ordered the two men to check Allegretti's pockets for money. Defendant encouraged and assisted his accomplices' possession of firearms by specifically relying on the firearm possession to intimidate Allegretti, all of which was accomplished by defendant ensuring entrance into Allegretti's apartment. Accordingly, defendant's conviction for felony-firearm based on an aiding and abetting theory is supported by sufficient evidence.

(ECF No. 11-16 at PageID.115–17.)

In his objections, Petitioner asserts that there was no evidence that he knew either of the unknown gunmen, that they knew him, or that the three of them had a plan. Petitioner also asserts that there was no evidence that he ever possessed a weapon, gave a weapon to the gunmen, or made any gesture to them.

4

Additionally, Petitioner asserts that Allegretti gave a statement to the responding officer (Officer Runcie) after the incident and did not mention the Petitioner telling the gunmen to check his pockets. Thus, Petitioner reasons that Allegretti's testimony at trial may not have been accurate. However, the existence of some contradictory evidence will not support a sufficiency of the evidence claim. *See, e.g.*, *Barron v. Moore*, 2014 WL 907193, at *3 (S.D. Ohio Mar. 7, 2014) ("[T]he Habeas Court can not consider such arguments as: 'there was contradictory evidence,' or 'whether the corroborating witness had a motive to lie' etc.").

Petitioner continues to ignore the evidence that the Michigan Court of Appeals cited as supporting his conviction. When viewed in the light most favorable to the prosecution, it is clear that Petitioner's claim must fail. According to Allegretti, Petitioner secured an entry into Allegretti's home, went to Allegretti's residence with two armed gunmen, told Allegretti to turn over the "guap" (slang for money), and ordered the two gunmen to check Allegretti's pockets. Thus, the Michigan Court of Appeals determination that the testimony of John Allegretti was sufficient to support the jury's verdict was not contrary to, nor an unreasonable application of clearly established federal law. The Court will overrule the Petitioner's objection on this ground.

## II. Ineffective assistance of counsel

### A. Failure to raise trial counsel's ineffective assistance

Petitioner also asserts that his appellate counsel should have raised numerous instances of his trial counsel's alleged ineffective assistance. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate

claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of Strickland under § 2254(d), the deferential standard of Strickland is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*,131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a Strickland claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

1. Confrontation

Petitioner first argued that his right to confrontation was violated when medical records relating to Allegretti's treatment by an emergency room doctor were admitted into evidence, so his trial and appellate counsel provided ineffective assistance by failing to challenge the admission of the evidence.

"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

The magistrate judge concluded that this ground for claiming ineffective assistance of counsel was meritless because there was no indication that the medical records admitted into evidence contained statements made by the doctor, and even if statements were made, they were not testimonial because they were made for medical treatment. In light of these conclusions, the Michigan Court of Appeals' determination to that effect on direct appeal was neither contrary nor an unreasonable application of clearly established federal law.

Petitioner's objections shed no light on the matter. He simply re-argues his position that he was entitled to cross-examine the doctor because Allegretti reviewed the medical records relating to his treatment while testifying. There is no colorable violation of the Confrontation clause based on the record presented, so Petitioner's trial counsel's failure to object is neither unreasonable nor prejudicial. *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir.

2013). Nor did his appellate counsel provide ineffective assistance by failing to raise the issue on appeal. *Id.*

### 2. Domestic assaults

Petitioner next argues that his trial counsel rendered ineffective assistance by failing to object to the introduction of prior bad acts evidence, so his appellate counsel also rendered ineffective assistance for failure to raise the argument on direct appeal. Petitioner's alibi witness testified that she remembered the date of the alleged robbery because earlier in the day, Petitioner had called to tell her that he had "gotten into it" with his girlfriend. Thus, to establish Petitioner's alibi, he needed to tie the domestic incident referenced by his alibi witness specifically to the date of the robbery, September 28, 2008.

The Michigan Court of Appeals rejected a variation of this claim on direct appeal.

> Defendant next claims that the prosecutor used the evidence of his two domestic violence charges to paint him as a bad man. Evidence of a defendant's other crimes, wrongs, or acts is not admissible to prove action in conformity therewith. MRE 404(b)(1); *People v Waclawski*, 286 Mich App 634, 670; 780NW2d 321 (2009). However, evidence of a defendant's other bad acts may be used for non-character purposes. MRE 404(b)(1); *People v Roper*, 286 Mich App 77, 92; 777 NW2d 483 (2009). Here, the two police reports of defendant engaging in domestic violence against Tigues were not used by the prosecutor to establish that defendant was a bad person. Rather, the parties used the evidence of the domestic violence reports to evaluate the credibility of Earlinia's alibi testimony. For example, that there was a police report that defendant engaged in domestic violence on September 28, 2008, before 3:30 p.m. provided corroboration to Earlinia's testimony. Accordingly, we reject defendant's argument that the prosecutor used evidence of the two domestic violence charges as improper character evidence.

(Mich. Ct. App. Op., ECF No. 11-16, PageID.1238.)

The magistrate judge correctly concluded that Petitioner's argument for ineffective assistance on this point was meritless because "the appellate court's conclusion that the

evidence was properly admitted as a matter of state evidentiary law was binding on the Court." (ECF No. 14 at PageID.2139 (quoting *Stumpf v. Robinson*, 722 F.3d 739, 746 (6th Cir. 2013)).) Petitioner's arguments to the contrary—that he suffered prejudice because of argument made by the prosecution with reference to these domestic assaults—are unpersuasive because of the state court's definitive ruling on the admissibility of the convictions. Because the State has definitively shown that that the evidence was properly admitted under state evidentiary law, any objection by trial counsel would have been denied as meritless, just as a challenge by Petitioner's appellate counsel would have been denied. "'[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith*, 477 U.S. at 536. Accordingly, Petitioner has shown neither unreasonable performance by his appellate counsel nor prejudice, so he is not entitled to habeas relief on this clam. *Coley, supra.*

### 3. The outstanding warrant for alibi witness

Petitioner next claims that his trial counsel was ineffective because she failed to object to testimony that his alibi witness had a warrant out for her arrest. The crux of this claim is that the prosecution improperly introduced the outstanding warrant to attack her character and credibility. As support for this claim, Petitioner has attached a letter from his trial counsel where she stated that members of the jury had mentioned that they used the outstanding warrant to determine that the alibi witness was not credible when polled after the trial.

Petitioner's claim is meritless because the outstanding warrant was introduced by his counsel as part of his defense. As the magistrate judge noted, the alibi witness failed to show

9

for the first trial date. The prosecution contended that the failure to appear reflected her reluctance to commit perjury on Petitioner's behalf. Petitioner's counsel proposed a different theory—that the outstanding warrant was the cause for her failure to appear, and not any misgivings about the testimony that she would give.

Once again, the Michigan Court of Appeals concluded that the testimony about the outstanding warrant was properly admitted for a purpose other than impeachment. And if trial counsel had objected to the admission of the outstanding warrant, it would have been a direct detriment to Petitioner's position, because it was his position that the alibi witness was not reluctant to testify out because of concerns over perjury, it was because of the warrant. Therefore, it was directly relevant to his theory of the case. Based on this, Petitioner's appellate counsel did not provide ineffective assistance because Petitioner has not shown that a challenge would have had merit or that he suffered prejudice as a result.

### 4. Hearsay

Petitioner does not challenge the magistrate judge's conclusion that he had not shown how the state court's rejection of his claim based on hearsay was contrary to or inconsistent with clearly established federal law.

### B. Failure to provide citations to trial transcripts in Standard 4 brief

Petitioner asserts that his appellate counsel provided ineffective assistance by failing to supplement his Rule 4 brief with citations to the trial record. The magistrate judge concluded that this claim failed because "clearly established federal law holds that 'there is no constitutional right to self-representation on direct appeal from a criminal conviction.'" (ECF No. 14 at PageID.2145 (quoting *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152,

163 (2000)).) Additionally, the magistrate concluded that under Michigan state law, appellate counsel's obligation to provide "procedural advice and clerical assistance" does not extend to a duty to insert citations to the trial transcript in a pro se Standard 4 brief. (*Id.* at PageID.2145.)

In his objections, Petitioner asserts that he relies on *Halbert v. Michigan* for clearly established federal law that would support his claim. 545 U.S. 605, 609 (2005). In *Halbert*, the United States Supreme Court held that the State of Michigan violated indigent criminal defendants' right to due process when withholding the right to appointed counsel where the defendant was "plea-convicted." *Id.* at 609. The Court concluded that states are not constitutionally required to provide appellate review of criminal convictions, but when they do provide an avenue for challenge, they "may not 'bolt the door to equal justice' to indigent defendants." *Id.*

In this instance, *Halbert* does not support Petitioner's claim, because he had appointed appellate counsel for his direct appeal—as required. There is no clearly established federal law that would require Petitioner's appellate counsel to provide trial transcript citations in support of Petitioner's Standard 4 brief, so this claim for relief is meritless. *See, e.g., Bowman v. Haas*, No. 2:10-CV-13385, 2015 WL 1540691 at *9 (E.D. Mich. April 7, 2015), *cert. of appeal. denied*, No. 15-1485, 2016 WL 612019 (6th Cir. Feb. 10, 2016) ("Any failure by appellate counsel to assist in the submission of a pro se [Standard 4] brief on behalf of Petitioner does not present a constitutional question."). Thus, the Court will overrule this objection.

11

### C. Failure to raise claim that jury was not composed of a fair cross section of the community because African-Americans were excluded

Petitioner also challenges his appellate counsel's failure to raise a Sixth Amendment fair cross-section claim on appeal. Petitioner first raised this claim in his Standard 4 brief. The Michigan Court of Appeals rejected it:

> Defendant argues that because only one out of the 48 members of the jury venire was African-American, the venire was not a representative cross section of the community. A defendant's Sixth Amendment right to trial by jury, US Const, Am VI, includes the right to have a jury venire from a representative cross section of the community. *People v Bryant*, 289 Mich App. 260, 265-266; 796 NW2d 135 (2010). To establish a prima facie violation of the fair-cross-section requirement, a defendant must establish the following:
>
>> (1) that the group alleged to be excluded is a "distinctive" group in the community;
>> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. [Duren v Missouri, 439 US 357, 364 (1979).]
>
> Assuming, as did the trial court, that African-Americans were underrepresented in the jury venire, defendant makes no claim that the underrepresentation of African- Americans was due to systematic exclusion, which is "exclusion 'inherent in the particular jury-selection process utilized.'" Bryant, 289 Mich App at 273, quoting Duren, 439 US at 366. Accordingly, defendant fails to establish a prima facie case of a violation of the fair-cross-section requirement.

(Mich. Ct. App. Op., ECF No. 11-16, PageID.1239.)

The magistrate judge also concluded that the claim was meritless because, like Petitioner's claim in the Michigan Court of Appeals, he had "failed to link the apparent underrepresentation to 'systemic exclusion of the group in the jury-selection process.'" (ECF No. 14 at PageID.2146 (quoting *Duren*, 439 U.S. at 364).)

Petitioner now argues in his objections that the source list used to select potential jurors "identifies the prospective jurors by name, street address, residency of city and state, and County, [and] zip codes." He takes issue with the fact that the source list does not identify prospective jurors by race. But Petitioner does not explain how the omission of prospective jurors' race from the source list constitutes "systemic exclusion" of African-American jurors. Because Petitioner's fair cross-section claim is unsupported as a matter of law, it did not constitute ineffective assistance to decline to raise the issue on direct appeal. *Coley, supra.*

### D. Failure to raise trial counsel's alleged perjury

Petitioner argues that his trial counsel committed perjury on the first day of trial before voir dire. Trial counsel asserted on the record (but not under penalty of perjury) that she had not made any stipulations with the prosecution relating to evidence without the Petitioner's consent. She explained that she had discussed with the prosecution her position on a number of evidentiary issues "to move the matter along more efficiently," but that she had not entered into any binding stipulations on behalf of her client. She further expressed Petitioner's reservations with her view of the case, and Petitioner raised the possibility of obtaining another attorney. (ECF No. 11-4 at PageID.478–79.)

Petitioner claims that the above statement made to the Court constituted perjury because the prosecution had previously stated "[Petitioner's counsel] has indicated that she's not calling witnesses, and I said well I'm not calling, so we kind of had an understanding that that things weren't going to, but the Defendant thought otherwise so." (ECF No. 11-4 at PageID.454.)

13

The magistrate judge concluded that the exchanges were not mutually exclusive, and that the latter statement did not demonstrate the falseness of the former. (ECF No. 14 at PageID.2148.) Therefore, Petitioner's appellate counsel was not constitutionally deficient by failing to challenge the alleged perjury on appeal.

Petitioner's objections do nothing to challenge the magistrate's conclusion. As support, he attaches a letter from his appellate counsel, indicating that appellate counsel discussed the matter with Petitioner's trial counsel. Trial counsel indicated that she had made a strategic decision to steer clear of Petitioner's criminal history, thus also leaving out the victim's criminal history.

However, that matter was not "set in stone" at the time of counsel's statement, because it was very uncertain whether she would continue to represent Petitioner through the trial. Petitioner's argument—as the magistrate judge concluded—is frivolous, and his appellate counsel's failure to pursue it on appeal did not constitute ineffective assistance of counsel. *Coley*, *supra*. Thus, the Court will overrule this objection.

### E. Failure to challenge the trial court's failure to give "tracking dog" jury instruction

Next, Petitioner challenges his appellate counsel's failure to raise the trial court's omission of a tracking dog jury instruction at trial. The Michigan courts categorically denied the claim as meritless. (*See* ECF No. 14 at PageID.2149.)

"Before a federal court may overturn a conviction resulting from a state trial in which [the challenged] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right

14

which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp* v. *Naughten*, 414 U.S. 141, 146 (1973).

Petitioner had a Due Process right to have every element of the charged crime proven beyond a reasonable doubt. Thus, when jury instructions omit an element of an offense or inaccurately instruct the jury, Due Process is implicated. *In re Winship*, 397 U.S. 358, 364 (1970). Likewise, criminal defendants are entitled to a meaningful opportunity to present a complete defense under the Due Process clause. *California v. Trombetta*, 467 U.S. 479, 485 (1984).

The magistrate judge concluded that the claim was meritless. First, the tracking-dog evidence was immaterial to Petitioner's guilt or innocence because Petitioner was not actually apprehended or identified because of the dog search. The magistrate judge concluded that the missing instruction did not bear on an element of Petitioner's charged offenses, nor any defense asserted. Thus, the absence of a cautionary instruction relating to evidence that neither inculpated nor exculpated the Petitioner could not rise to the level of a constitutional violation, and was not contrary to nor an unreasonable application of clearly established federal law.

In his objections, Petitioner asserts that the failure to give the instruction was highly prejudicial because it may have led jurors to believe that the use of a tracking dog meant that the he or his compatriots left behind some evidence at the scene of the crime. He asserts that the prosecution deliberately "injected" the error into the proceedings and that doing so was a denial of his "fundamental rights." As support, Petitioner cites *People v. Perryman*, which held, as a matter of Michigan evidentiary law, that tracking dog evidence is insufficient

to support a conviction, absent other evidence. 280 N.W. 2d 579 (Mich Ct. App. 1979). However, even the *Perryman* court held that a failure to give the tracking dog instruction did not warrant reversal. *Id.* at 582 ("Defendant also contends that it was error for the court not to give a cautionary instruction on the unreliability of tracking dog evidence. However, defendant made no request at trial for the instruction, and counsel declared itself satisfied with the court's intended jury charge, which included no such reference. As we are not persuaded as to the existence of manifest injustice, the failure to object to the jury instruction bars reversal.").

Petitioner also cites *Bollenbach v. United States*, 326 U.S. 607 (1946), and asserts that it is "well-settled that even where the trial attorney does not request the appropriate instruction, it is reversible error for trial judge to fail to give the proper instructions." On this point, Petitioner misapprehends the law. *Bollenbach* exemplifies one of the situations in which jury instructions involving an essential element of the charged crime—the defendant's knowledge—was given erroneously, thus implicating Due Process. When jury instructions do not relate to an essential element of a charge or defense, they do not implicate due process, and thus cannot rise to the level of a constitutional violation that could warrant habeas corpus relief. *See Cupp*, 414 U.S. at 146. At most, the tracking dog instruction would have been "desirable," but the trial court's failure to give the instruction falls well short of "violat[ing] some right . . . guaranteed to the defendant by the Fourteenth Amendment." *Id.*

Thus, Petitioner has failed to show that the state court's rejection of his instructional error claim was contrary to or an unreasonable application of clearly established federal law. The Court thus overrules Petitioner's objection.

**F. Failure to raise trial counsel's failure to raise the prosecutor's failure to provide information against the Prosecutor's star witness**

Finally, Petitioner asserts that his appellate counsel rendered ineffective assistance for failing to argue that the prosecutor violated the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner asserts that the prosecution withheld information that the victim, Allegretti, had an outstanding warrant for his arrest.

*Brady* claims have three elements: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The magistrate judge concluded that Petitioner could not raise a valid *Brady* claim because his trial counsel had been aware of Allegretti's criminal history and the outstanding bench warrant by virtue of her own investigation. The *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006). Therefore, Petitioner could not show prejudice.

Petitioner's objections on this point are merely a rehash of the argument he has already presented. He asserts that because the jury used his alibi witnesses' outstanding warrant to discount her credibility, it would have done to the same with Allegretti, and thus there was a strong possibility that it would have found him not guilty. However, he does not address the magistrate judge's conclusion that he suffered no prejudice because his counsel was aware of the outstanding warrant prior to trial.

17

Accordingly, the Court agrees with the magistrate judge that Petitioner's appellate counsel acted reasonably by declining to raise the issue on appeal. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley*, 706 F.3d at 752.

I.  Conclusion

In short, Petitioner has presented no claim for which he is entitled to habeas corpus relief. The Court will overrule Petitioner's objections and adopt the R & R as the Opinion of the Court.

### Certificate of Appealability

The Court must determine whether a certificate of appealability should be granted. 28 U.S.C. § 2253(c)(2). A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. Id. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484. "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this

18

standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims. *Id.*

Examining petitioner's claims under the standard in *Slack*, a reasonable jurist would not conclude the Court's assessment of each of petitioner's claims to be debatable or wrong, particularly in light of the AEDPA deference owed to the Michigan courts. Accordingly, Petitioner's certificate of appealability is **DENIED**.

## ORDER

For the reasons discussed in the accompanying opinion: Petitioner's objections are **OVERRULED** (ECF No. 15); the Magistrate Judge's report and recommendation is **ADOPTED** as the Opinion of the Court (ECF No. 14); Petitioner's petition is **DENIED** (ECF No. 1); and a certificate of appealability is **DENIED**. Judgment will enter separately.

**IT IS SO ORDERED.**

**Date:** May 25, 2018 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge